UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

VICTOR SANCHEZ and ANGELINA SANCHEZ, individually and as Husband and Wife, UBALDO SANCHEZ, an individual and doing business as Strathmore Ag Supply,

Plaintiffs,

v.

FRIANT WATER AUTHORITY, a public agency of the State of California, UNITED STATES BUREAU OF RECLAMATION, an agency of the United States of America, and TULARE COUNTY, a county of California,

Defendants.

No. 1:23-cv-01698 WBS SAB

ORDER RE: MOTIONS TO DISMISS

----oo0oo----

Plaintiffs Victor Sanchez, Angelina Sanchez, and Ubaldo Sanchez bring this action asserting trespass to land (Claim 1), injunctive relief (Claim 2), negligence (Claim 4), and unreasonable diversion of surface water (Claim 5) against

defendants Friant Water Authority ("Friant"), United States Bureau of Reclamation (the "Bureau"), and Tulare County. (Compl. (Docket No. 1).) Plaintiffs also bring an inverse condemnation claim (Claim 3) against Friant and the County. (Id.) Friant and the Bureau now move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). (Friant Mot. (Docket No. 12); U.S. Mot. (Docket No. 20-1).)

As the parties are familiar with the claims and allegations in the complaint, the court will not recite them in detail here.

## I. Federal Tort Claims Act Jurisdiction (28 U.S.C. § 1346(b)(1)) (Claims 1, 2, 4, 5 -- Against the United States)

Plaintiffs argue that the court has jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), over the claims asserted against the Bureau because the Bureau is a federal agency of the United States Government.[1] (See Compl ¶ 9.) Both Friant and the United States contest this jurisdictional basis and argue that the United States is not a proper party to this action.

All of plaintiffs' claims relate centrally to a failure to timely and adequately pump stormwater out of the Reservoir Property.[2] (See Compl. ¶¶ 14, 31, 38, 55-56, 64-65.)

---

[1] The only proper defendant in an FTCA suit is the United States, and "the federal agency cannot be sued in its own name." FDIC v. Meyer, 510 U.S. 471, 476 (1994) (internal quotation marks omitted). The court accordingly construes allegations directed against the Bureau as directed against the United States.

[2] Plaintiffs' negligence claim additionally alleges a failure to properly maintain the pumps. (Compl. ¶ 55.)

Additionally, plaintiffs clearly allege that the County owns the Reservoir Property and the pumps affixed to it (id. ¶ 47), and that Friant operates the Friant-Kern Canal and decides when surface water may be pumped into it (id. ¶ 48). Further, plaintiffs allege that a County employee promised but failed to operate temporary pumps throughout the night, and that this failure proximately caused the initial flooding of his property. (Id. ¶¶ 15-17.)

In fact, the only allegation that plaintiffs direct squarely at the United States concerns its technical ownership of the Friant-Kern Canal. (Id. ¶ 4.) However, the operation and maintenance of the Friant-Kern Canal and "related in-line control facilities; wasteways, laterals, holding reservoirs, turnouts and measuring devices, associated water level control devices and water level recording instruments; appurtenant equipment, structures and maintenance buildings" -- altogether the "Project Works" -- is subject to a Cooperative Agreement between Friant and the United States, which places under Friant's sole purview the "complete operation and maintenance" of the Project Works, as well as "the performance, funding, and financing of emergency or unusual operation and maintenance." (Jackson Decl. (Docket No. 20-2) Ex. A ("Cooperative Agreement") pp. 3, 5, 8.)

Accordingly, the United States asserts sovereign immunity under the independent contractor exception to the FTCA's limited waiver of immunity.[3] (U.S. Mot. at 9-12.) "[T]he

[3] The court ponders why the doctrine is styled as an "exception," as opposed to an exclusion, since the FTCA expressly provides that the term "'Federal agency' . . . does not include any contractor with the United States . . . ." 28 U.S.C. § 2671.

independent contractor exception [protects] the United States from vicarious liability for the negligent acts of its independent contractors." Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016) (quoting Yanez v. United States, 63 F.3d 870, 872 n.1 (9th Cir. 1995)). "[T]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the detailed physical performance and day to day operations of the contractor." Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) (citations omitted).

Subject to that critical test, the court concludes that the independent contractor exception applies here.[4] The Cooperative Agreement clearly delegates all responsibilities regarding physical performance and day-to-day operations regarding the Project Works to Friant. In addition, no facts show that the relationship between Friant and the United States was in practice anything contrary to what was set forth in the Cooperative Agreement. The Ninth Circuit has also found that the independent contractor exception applies in an analogous situation involving the contractual transfer of care, operation, and maintenance of an irrigation project from the United States to a water utility association. See Borquez v. United States, 773 F.2d 1050, 1052-53 (9th Cir. 1985) ("The government, having validly transferred operation, care and maintenance, is also not liable for any acts or omissions of the Association. The

---

[4] The court therefore need not consider the United States's argument regarding the discretionary function exception or its more specific claim-by-claim arguments.

liability of the United States extends only to the negligence of employees.").[5]

Accordingly, the court will dismiss plaintiffs' claims as asserted against the United States and decline subject matter jurisdiction based on the FTCA.

II. Federal Question Jurisdiction (28 U.S.C. § 1331) (Claim 3 -- Against Friant and County)

However, the court still retains jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. § 1331, because plaintiffs assert an inverse condemnation claim partly under the Fifth Amendment's takings clause.[6] (Compl. ¶¶

[5] Plaintiffs' only argument in opposition is that there are insufficient facts to determine which specific pieces of property and appurtenances fall under the Cooperative Agreement. (Docket No. 23 at 4-6.) First, plaintiffs mistake who has the burden of proof to show the existence of subject matter jurisdiction. See In re Dynamic Random Access Memory Antitrust Litigation, 546 F.3d 981, 984 (9th Cir. 2008) (burden lies with party asserting subject matter jurisdiction). Second, plaintiffs themselves clearly allege that the County owns the Reservoir Property and the pumps affixed to it. (Compl. ¶ 47). Even by plaintiffs' allegations, these are the only pieces of property and appurtenances genuinely at issue here.

[6] Plaintiffs bring their inverse condemnation claim under both the federal and California constitutions. California courts generally construe the federal and California takings clauses congruently. Small Property Owners of San Francisco v. City and County of San Francisco, 141 Cal.App.4th 1388, 1396 (Cal. App. 1st Dist. 2006) (citing San Remo Hotel L.P. v. City And County of San Francisco, 27 Cal. 4th 643, 661 (2002) ("[W]e appear to have construed the [federal and state constitutional takings] clauses congruently.")); see also San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 337 n.18, (2005) (assuming "that the California Supreme Court was correct in its determination that California takings law is coextensive with federal law"). The parties do not contend there is any material difference between federal and California takings jurisprudence. The court will proceed accordingly.

59-68.)

To establish an inverse condemnation claim, a plaintiff must show that the defendant affirmatively or intentionally engaged in an act giving rise to the claim. See Parker v. United States, 93 Fed. Cl. 159, 163, aff'd, 401 F. App'x 531 (Fed. Cir. 2010) ("The plaintiff must plead that the [] government has performed some affirmative act that caused the divestiture of her property interest."); Customer Co. v. City of Sacramento, 10 Cal. 4th 368, 381 (1995) ("[that] damage caused by the negligent conduct of public employees or a public entity does not fall within the aegis of [the takings clause] -- has been followed repeatedly and uniformly [for] more than 60 years"); Arreola v. Monterey County, 99 Cal. App. 4th 722, 742 (Cal. App. 6th Dist. 2002) ("The fundamental justification for inverse liability is that the government, acting in furtherance of public objectives, is taking a calculated risk that private property may be damaged. That is why simple negligence cannot support the Constitutional claim.") (citations omitted); Mercury Cas. Co. v. City of Pasadena, 14 Cal. App. 5th 917, 925 (Cal. App. 2d Dist. 2017) ("Inverse condemnation liability does not arise out of general tort liability, such as negligent acts in the day-to-day maintenance or operation of a public improvement").

Here, plaintiffs fail to allege that defendants took any such affirmative action. Even construing plaintiffs' every allegation as true and granting plaintiffs every reasonable factual inference, the complaint only provides an accounting of defendants' failures -- failure to run the small pumps throughout the night on January 9 (Compl. ¶ 17), failure to turn on or

authorize the use of the large pumps thereafter (id. ¶¶ 15, 17, 31), and failure to properly maintain the pumps (id. ¶ 39).[7]

Accordingly, the court will dismiss this claim and extinguish federal question jurisdiction over this action.

III. Supplemental Jurisdiction (28 U.S.C. § 1367) (Claims 1, 2, 4, 5 -- Against Friant and County)

Still, federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).[8] However, a district court "may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." Id. at § 1367(c); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc) (district courts may decline sua sponte to exercise supplemental jurisdiction).

"[I]n the usual case in which all federal-law claims

---

[7] Plaintiffs do allege that "[t]he damage caused by [sic] the Sanchez Property was the result of the inherent risks associated with the construction, design and maintenance of the Reservoir Property." (Compl. ¶ 49.) However, plaintiffs also allege that, during a thirty-five-year period, their property never flooded to the point of imperiling their personal property, and that defendants diligently used water pumps to drain the Reservoir Property on the rare occasions that it became flooded. (Id. ¶¶ 13-14.) This undercuts any argument that defendant's affirmative actions regarding the construction, design, and maintenance of the Reservoir Property caused the Sanchez Property to flood. It also reinforces defendants' alleged failure to engage the pumps as the causal locus of harm.

[8] There is no diversity jurisdiction in this case because the parties are not diverse.

are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). This case is no exception. The first three factors favor no particular forum. Comity, however, strongly favors the declination of federal supplemental jurisdiction because the remaining defendants are both California entities with a complex legal and regulatory relationship. In addition, plaintiffs' fifth claim for unreasonable diversion of surface water implicates an especially complex body of state law better reserved for the California courts to resolve.

D. Leave to Amend

Federal Rule of Civil Procedure 15 directs the court to freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Accordingly, plaintiffs will be given leave to amend their complaint to properly assert claims against the United States inverse condemnation claims against Friant and the County, if they are able to do so consistent with this Order.

IT IS THEREFORE ORDERED that defendants Friant Water Authority and the United States's motions to dismiss plaintiffs' complaint (Docket Nos. 12, 20) be, and the same hereby are, GRANTED. Plaintiffs' complaint (Docket No. 1) is DISMISSED. Plaintiffs have twenty (20) days from the issuance of this Order

to file an amended complaint, if they are able to do so consistent with this Order.

Dated: May 29, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE